## Natello Estate

*Horace N. Lombardi* and *Lombardi & DeMarco*, for appellant.

*Rames J. Bucci*, *Bucci & Bucci* and *John S. T. Brooks*, contra.

KLEIN, P. J., July 11, 1961.—Paul F. Natello died a resident of Philadelphia on July 22, 1957, leaving to survive him, as his next of kin, eight children: Charles, John, Paul, Angelina, Anna, Edith, Americo and Michael.

220

Letters of administration were granted to Charles on July 31, 1957, all of the other surviving children having filed renunciations. He was in the process of administering the estate when, on May 27, 1960, almost three years after the letters were issued, Michael A. Natello, one of the sons, following a quarrel with respect to the distribution of the estate, filed a petition for citation alleging that on September 15, 1959, he had found among decedent's effects two pieces of paper, one dated October 6, 1939, and the other July 18, 1953, which petitioner contended were wills leaving the entire estate to him.

These documents were both most unusual in character and form and by their very nature cast serious doubt upon their validity. The first is a form used by the Philadelphia Gas Works Company authorizing it to make connection with gas lines and the second is a page torn from a small note book. The following are photostatic reproductions of the writings:

Date _Oct 6 /39_

I _____ do hereby give

permission to The Philadelphia Gas Works Company to

connect an _____

being leased by _____

to the gas lines supplied by the gas meter in my name

at _michael get all my estati_

Signed _Paul J natell_

After a full hearing, Register of Wills John E. Walsh, Jr., on November 18, 1960, in a comprehensive opinion, dismissed the petition and denied probate of the two papers. He said, page 6:

"After hearing the testimony of the petitioner and his witnesses and the testimony of Mr. Bucci and Mr. McCool and after a thorough examination of the records and of the exhibits, the Register has easily come to the conclusion that the papers offered for probate are not Wills and therefore not entitled to probate.

He does so for the reason that he believes the testimony of Mr. McCool and Mr. McCool's explanation of the exhibits, the character of the handwriting and the unqualified testimony that the words, 'Michael get all my estate' on P-2 and P-3 were written by the same person and that person was not Paul F. Natello.

"As to P-2, the Register finds that the dispositive words were written a long period of time after the signature was affixed and therefore the decedent did not adopt or publish these words as his own. As to P-3, the Register finds again that the dispositive words were written some time after the signature, Paul F. Natello, were not in the decedent's handwriting and because of the fact that the signature was erased and reconstructed by some one other than the decedent, the words, 'Michael get all my estate' were not adopted by or published by the decedent as his will. The crude attempts to produce these fraudulent Wills were undoubtedly perpetrated by the petitioner."

The register stated, further:

"If there were any doubt about it, it would be dispelled by the crude, evasive, belligerent and non-responsive testimony of the petitioner in an attempt to explain the implausible circumstances of the alleged execution and publication of these papers by the decedent. It is clear to the Register that the petitioner contrived these specimen writings himself and produced them in accordance with his threat to do so when the implementation of the family agreement produced results not to his liking."

On December 8, 1960, Michael A. Natello appealed from the register's decree. On February 3, 1961, he filed a petition for a citation to show cause why his appeal should not be sustained and an issue directed to try by jury the following questions of fact:

1. Are the dispositive provisions in the alleged wills in the handwriting of decedent?

2. Whether decedent adopted and published the dispositive provisions in the alleged wills as his own?

A responsive answer was filed on behalf of decedent's other children specifically alleging that "the two offered wills are forgeries and not in the handwriting of the decedent." The answer avers further that:

5. The proponent had agreed to a family settlement, to accept premises 1621 South Twenty-third Street in lieu of all claims.

6. The proponent had agreed to refund $1,500 received as part payment of his share but when requested to do so, and when a deed to said premises had been executed and delivered to him, he refused to accept the deed and refund the legacy of $1,500 and to pay costs, rents and expenses for his occupancy of premises 1621 South Twenty-third Street and, instead, filed the forged wills in the office of the register of wills for probate.

The matter came on for hearing on May 10, 1961, at which time it was agreed by counsel, in accordance with the provisions of section 744 of the Orphans' Court Act of 1951, as amended, that "the appeal may be decided upon the testimony and record made before the Register of Wills." It was further agreed that the only witness who would be called was Lulu Rodd, who appeared in behalf of the proponent.

Mrs. Rodd stated that, about Thanksgiving time in 1953, decedent showed her the two papers offered by the proponent and said that they were his wills and that he had left Michael all his estate because he was good to him for 10 years. Her demeanor on the witness stand convinced the hearing judge that she was a completely unreliable witness, contradictory and difficult to believe. She appears to be motivated by a vindicative desire for revenge against the administrator, Charles, and decedent's children, other than Michael, for evict-

ing her from the apartment she had occupied for about 10 years at 32 South Fifty-first Street, owned by decedent when he died.

The hearing judge would unhesitatingly dismiss this appeal if he had the authority to do so under the law. He is of the opinion, however, that the present case is squarely ruled by Lare Will, 352 Pa. 323 (1945), in which the Allegheny County Orphans' Court, dealing with a writing appearing on a blank check, signed by decedent and offered for probate under equally suspicious circumstances, sustained the appeal and refused probate, but was reversed on appeal. Mr. Justice Patterson, speaking for a majority of the Supreme Court, said at page 330:

". . . It is the function of the hearing judge to determine whether there is a substantial dispute upon a material matter of fact. *He is not, however, to constitute himself the jury. If a substantial dispute does exist, even though the verdict might be at variance with the opinion of the judge, the issue must be granted.*" (Italics supplied)

See also DeLaurentiis' Estate, 323 Pa. 70 (1936); O'Malley Will, 370 Pa. 281 (1952).

In the present case, Michael A. Natello, the proponent, testified that decedent signed both of the questioned writings in his presence, and a witness, Lulu Rodd, maintained that decedent showed her the two papers and stated that they were his wills. In view of this testimony, it is clear from a study of the entire record, that a substantial dispute exists upon material matters of fact. The hearing judge has, therefore, reached the conclusion, albeit reluctantly, that the appeal of Michael A. Natello must be sustained and his request for an issue granted, although it is wholly unlikely that any impartial jury would believe that the two writings in question actually were intended by decedent as wills. Accordingly, we enter the following

### Decree

And now, July 11, 1961, an issue is awarded to try by a jury in the orphans' court, the following questions of fact:

1. Are the dispositive provisions in the alleged wills bearing dates October 6, 1939, and July 18, 1953, in the handwriting of decedent, Paul F. Natello?

2. Did decedent, Paul F. Natello, adopt and publish the dispositive provisions in the said two writings as his own?